al. Good morning, Your Honors. May it please the Court, what we're dealing with here is an order of the Bankruptcy Court liquidating on a final basis the proofs of claim of a State Court receiver, Rosa Orenstein, and her State Court-appointed counsel, MSM. It's a half-million dollar, non-dischargeable judgment of a federal court against my client Edward Mandel. Normally this would be a question of fact entitled to a very deferential standard. Normally I think an appeal wouldn't even be had of an order like this, which is why it's my job to demonstrate the multiple errors of law that the Bankruptcy Court committed in the process. And then of course, as Your Honors know from my brief, there is a matter of first impression under the Bankruptcy Code that is of importance, which the Court may or may not need to get to depending on how it adjudicates the other matters. And that question, which is I think for the first time before the Fifth Circuit, is whether an unsecured pre-bankruptcy, pre-petition creditor is entitled to post-bankruptcy, post-petition attorney's fees in defending its claim. Allow me to make a few general points. One, I've already mentioned that I'm not arguing errors of fact, I'm arguing errors of law, and I will point out to you why. The second point is that it was at all times there, the claimant's burden of proof and persuasion, both under Texas law of receivership under the Bankruptcy Code. And third, the District Court was a little bit unhappy with me because they could not in fees and expenses. I contested on various bases, and I asked this Court not to repeat that because the Bankruptcy Court looked at the fees in camera. The Bankruptcy Court reviewed the fee statements in camera. I appeared at the hearing in front of the bankruptcy judge some six or maybe seven years ago now. This case has been up and down to the Fifth Circuit before. And the day before I appeared on what I thought was a $150,000 trial, they amended their claims to almost half a million dollars. That happens in bankruptcy. That's fine. We proceeded with trial. I did not contest that. But I did contest the Bankruptcy Court's review of the key evidence in this case in camera. The Bankruptcy Court might have been entitled to do so. But as a result, I cannot tell Your Honors, okay, if Your Honor agrees with me on this point, it should be a $50,000 reduction. If Your Honor agrees with me on this point, it should be a $100,000 reduction. I would normally do that. I can't. So if the court agrees with me, then the appropriate step would probably be a remand with instructions. Okay. Well, then, do you agree that the documents from the District Court appeal are part of the record on appeal? They were kind of set off in some weird place, and it was very difficult to access the record. It didn't get brought up properly. And I think the parties brought it to the clerk's attention, but it was not actually properly remedied on our documents. Both Ms. Orenstein and I were perplexed with why the record appeared to be incomplete and what happened. I spoke to the District Court clerk. The District Court clerk said that they started scanning into PDF format the extensive record. For some reason, they stopped, and then six boxes were left. So those six boxes can be, we can consider those. Of course, Your Honor. And I'm going to ask the other side the same question, so whenever it's their turn. So that's okay to look at those documents? It is, Your Honor. It is. But I would maintain that it's irrelevant because, again, I'm going to phrase my arguments as a matter of law. So let me tell Your Honors what is not in dispute. What is not in dispute is that the receiver is entitled to pre-petition fees as a receiver. She's entitled to post-petition fees as a receiver. What's not in dispute is that MSM is entitled to pre-petition and post-petition fees as her counsel. But that's not all that happened here. Your Honors have in my briefing, and it's unrebutted because the receiver herself testified 100% unrebutted, that she also provided services as a bankruptcy lawyer to herself. It's unrebutted that she obtained the services of two other lawyers without getting approval from the court. It's unrebutted that she provided services to other claimants, a gentleman named Thrasher and a gentleman named Coleman, who were prosecuting vicariously for white male claims against my client. So you can't tell us, so if I were to ask you what amount of fees do you concede that Orenstein is entitled to recover under the receivership orders, you would not be able to give me an answer. She's entitled to $10,000 or $100,000. I will say that there was a pre-petition order entered by the state court which did allow a portion of the fees. We're not contesting that. Those fees should have been chargeable at 52.5% to my client under the receivership order. The bankruptcy court charged all 100% of those fees to my client, and we can talk about that some, because I believe the bankruptcy court had no basis on which to do that. So is that the $10,468.42? Oh, Your Honor, it's much more than that, but I don't recall. Because there was an amount there that you did not object to of that amount earlier. Again, there is a six-figure dollar amount that is appropriate and reasonable. I just can't tell Your Honors what that amount is. That's unusual. What is unusual, Judge? For us not to be able to say, well, this amount's owed, this amount's not owed. Part of the problem, Your Honor, is Ms. Orenstein testified under oath, again, there's no question of dispute or fact here, that she had not segregated her time as receiver and as attorney. That she could not segregate her time because in her mind, and I understand why she's an attorney, in her mind she doesn't know when she's acting as a lawyer, when she's acting as a receiver. Do you appeal that the bankruptcy court didn't let you review the unredacted timesheets, or do you not appeal that? Well, Your Honor, I'm not sure how to answer that question. I objected at the trial, and I preserved my, I guess, my objection point. But I don't think it's a specific issue that I mentioned in my notice of appeal. It ultimately doesn't matter, Your Honor, whether it was $5 or five hours spent on this matter, if the matter is non-compensable because it is outside the scope of the receivership orders. I don't know if that, if I answered your question. Okay. But if we decided that the second receiver order was a substitute order and not supplementary to the first order, then it would be clearly within the second order, if it is a substitute order. It does not have that preclusion or requirement that they get permission from the court to hire independent counsel. I don't agree with you, Your Honor. I don't agree with you because under Texas law, independent of the receivership order, a receiver needs authority from a court to hire an attorney. And I have briefed that at some length. So Judge Jolly, whether it's a substitute or an amendment, no permission was sought. Let me move to the second. And permission was required in either event. I believe so, Your Honor. In fact, that is what happened when Ms. Orenstein retained the services of MSM. So if under state practice she didn't need authority to retain counsel, then why did she do that? Why did the state court judge affirmatively approve her retention of MSM? So we have, I believe, a fundamental problem under the law, irrespective of the receivership orders, that Ms. Orenstein hired herself, hired Hunton & Williams, and hired Mr. Levenger's old firm. And what about the third order, the payment order? The payment order, Your Honor... That seems to indicate clearly that the district court was approving the hiring of independent counsel. The payment order basically retroactively authorized Ms. Orenstein to have retained MSM. The district court and state court, let's concede, had the discretion to allow another Moreover, the bankruptcy court... Well, the bankruptcy court first was never asked to do so, therefore there was not an objection available, but also the bankruptcy court had relinquished jurisdiction over that matter. The bankruptcy court retained jurisdiction solely to quantify the reasonableness of the fees. The bankruptcy court then remanded this White Nile adversary back to the state court, so it would have been the state court then that would have had any kind of ongoing jurisdiction. But let me move to the second more fundamental point, Judge Jolly, which is that both of these claimants were acting in two capacities. One, they were acting as creditors against my client because they were owed pre-petition amounts they hadn't paid. No problem, they're allowed to act in their own interests. They're not allowed to bill my client for it. But the second capacity they were acting in was, in fact, representing White Nile. But they were representing White Nile in the bankruptcy case. And, Your Honor, nowhere were they authorized to represent White Nile in the bankruptcy case. The bankruptcy case was nothing but a mirror of the state court action, was it? No, Your Honor, because the bankruptcy case was filed as a Chapter 11. At that time, it was a large bankruptcy case with many moving pieces, and then I effectuated our removal of the White Nile adversary to the bankruptcy court. Tell me, what was the difference from your point of view or your client's point of view in the proceeding in the state court? And that in the bankruptcy court, or stated differently, what in the bankruptcy court – if the case had remained solely in the state court, what charges would not have been – or what fees would not have been incurred by simply being in bankruptcy court? The issue would have been the same, Your Honor. What? The issue would have been the same, Your Honor. But I'm talking – I said the fees. Well – What additional fees, if the case had never been removed to bankruptcy court, what additional fees have you incurred in bankruptcy court? Well, let's – Would not have occurred in state court. Okay. So they were appointed to represent the interests of White Nile in litigation. Fine. No problem. They took it upon themselves to then also represent White Nile as a creditor in the bankruptcy case. That is the qualitative difference, Judge Jolly, that they took it upon themselves to no longer represent White Nile just in litigating against my client and Stephen Frasher and everyone, a breach of contract, and tortuous interference. I mean, but that did not have its source in bankruptcy law or in Federal law. It had its source in the state court proceedings. Correct. And solely in the state court proceedings. So, I mean, why would that not have been authorized if we assume – I mean, except in your – disregarding your argument about the fact that it didn't get court approval. Why would that not be an appropriate charge on the fees for the – Ms. Ornstein. We start, Your Honor, we start with Texas law, which has two general kinds of receivers. It has a general receiver. A general receiver is one that supplants the pre-receivership management and basically becomes the management. It can basically do what they want, subject to the approving court. Then you have a special receiver. A special receiver is appointed for a specific purpose, i.e., to liquidate collateral or to represent someone in litigation. Ms. Ornstein was appointed as a specific – as a special receiver. Therefore, and this is Supreme Court of Texas law, she is limited in her authority to what is in the receivership order. Here, the receivership order, both of them, give her the authority to do three things, to take over the books and records. Well, that doesn't apply. Then to represent White Nile in, quote-unquote, this litigation, I would argue that that does not extend to a subsequent bankruptcy filed. It's the same litigation. That's the point that I'm trying to get at. But it wasn't, Your Honor. Well, you haven't told me how it's different. Well, because my client filed a Chapter 11 bankruptcy case seeking to reorganize his debts. He was litigating with other claimants, multiple other claimants. I'm talking about this case. In other words, in what this attorney – Your Honor, I'm sorry if I'm not answering your question. There is a bankruptcy case and then a separate federal proceeding called an adversary proceeding, which is then the removed state court. I've conceded already that they were entitled to post-petition fees for representing White Nile in the removed proceeding, the adversary. But the White Nile matter is far beyond. It's in the big umbrella, not just the adversary matter. And so that's – and she's representing in the White Nile matter, right? Your Honor, the state court says to direct and control White Nile's participation in this litigation. That is the order of the state court. In the litigation in the state court, not in the bankruptcy matter, which has a lot more White Nile. We just had an opinion recently about White Nile and its liabilities vis-a-vis or credits vis-a-vis your client. Your Honor, not only that, Your Honor, not only that, but it was not contemplated at this time that there would be a future bankruptcy. So, again, I suggest that this order is limited. Texas law is clear that the receiver doesn't have some ability to generally protect her res or to generally act in the interest. She doesn't have any implicit powers. And I give you proof positive, Your Honors, because what we saw, and this is clear in the record, is that after the remand, the multiyear remand back to the state court, the receiver did go and seek authority from the state district court judge. And she said, give me authority, please, to sue the former lawyers and fiduciaries of White Nile. And the state court refused. He said no. So why would she need authority to go sue other potential targets of White Nile, and why would he say no if she had that authority implicitly or explicitly already? So what do you seek relief from us? What do you want us to do? You obviously want us to remand to give some instructions. What are these instructions? I would like, in my dream world, I would like a ruling that 506B excludes prepetition and secure creditors from postpetition fees because I'm a bankruptcy expert and I see that issue every day. Knowing that that is a difficult issue and that the court prefers to decide issues that are easier to decide, I would prefer that the court reverse points X, Y, and Z and remand to the bankruptcy court with instructions that the bankruptcy court shall not allow fees incurred for these lawyers that were never authorized. Okay, reverse points X, Y, and Z. I don't know what points X, Y, and Z are. So, again, representing White Nile in the bankruptcy case itself as a creditor, hiring lawyers, including herself, without court authority, failing to segregate time between acting as a receiver and acting as a lawyer, and then the fees incurred representing their own interests as creditors of my client as opposed to representing the interests of White Nile. Those are the four fundamental points, and there is no dispute of fact that some large number of these fees were incurred for each of those four. I don't know what number, but Ms. Orenstein— Do you believe any of those categories are arguable? Yes, of course they're arguable. I believe that the question of whether they're entitled to fees as unsecured creditors is arguable. Again, that's the important one in this case, and I know that some cases have held otherwise, and it is murky, I will grant you, because of the two sections of the bankruptcy code, but my primary time is up, Your Honor. I might have discussed that fee issue in my rebuttal time. Thank you, sir. Thank you. May it please Your Court. May it please Your Honors. I was listening carefully to your questions because I presume you've received a bench brief and that the materials that are before the Court have been reviewed at a level that would allow you to ask us salient and meaningful questions to your ultimate determination. I think you've hit it right on the head, each of you, Judge Jolly, Judge Elrod, the questions that drove to the core of the dispute. What's really before you? What's really before you is a thinly disguised, respectfully, collateral attack upon the determination multiple times of the Court with primary jurisdiction, that would be the Honorable Judge Eric Moyet in the 14th District Court in Dallas, Texas. He determined in May of 2009 that Ms. Orenstein would be appointed a receiver, and he gave her broad and specific powers. He set her fee at a discount to the market, at a discount to her own rate, and it was accepted by the appellant. He divided it, which imposed a reasonableness obligation, and 52.7 and 47.5, which were their stipulated percentages, and he effectively said, go forth and do this work, which was to control and manage White Nile, which should not matter geographically where it takes place. Why did Orenstein not segregate her time when she was representing her interest as a creditor in the bankruptcy case, White Nile's interest as a creditor, as its receiver, and acting as an attorney in the bankruptcy case? She's going three hats there, so why didn't she segregate her time? Well, we're not acting respectfully, Judge, as a trustee or as a professional appointed in a bankruptcy estate. We were appointed under state law as a receiver, and the rules that would control and comply for this umbrella of activities, the wearing of her hat and her brain as a bankruptcy counsel to do all those chores, couldn't have been subdivided. What did we do for our— In state law, you would have had to—I used to be a state district judge, and if she was going to try to get those fees in state court, she would have to tell what parts of the job they were done for each one of those. You have to segregate your fees in state court. I honestly believe they were the same discrete services, with one narrow exception, for all of White Nile as they were for her, no matter what hat she was wearing on which side of her brain on any given day. The actual preparation of her own physical claim would be the only service that was discreetly dissimilar from all the other general services. But she's seeking money for that, too. The court applied the reasonableness discount that is available to it both under the receivership standard and under the Arthur Anderson factors when it discounted. It doesn't have to tell us all the reasons or even any of the reasons that— I thought the district court did say that it was specifically excluding any fees that she was claiming relating to the personal claims that she was making. I think it did, Your Honor, and I think that's what I was addressing with Judge Elrod, that there is a discount that's available under the Arthur Anderson factors and under the receivership. She specifically said that. She specifically said that. She didn't go to the very next level of drill down and say, I did it for that singular task of putting hand to paper to do the claim, but it has to encompass the things that she did for herself, which was to perfect the two claims, number 27 and 28, which was a de minimis task in the totality of what's now eight years of services. How does White-Niles' award of $497,000 that was just affirmed affect this claim, and does the damage award go to Orenstein in individual capacity or payment for her fees, or is it out of the receivership estate? How does that all work in determining what amounts are still due? Yes, Your Honor. And I know they're not actually collected at all. That's where I was going. If any of this is actually collected, and I would consider that a pipe dream given the phenomenally successful efforts that Mr. Mandel has exposed us all to to separate us by time, distance, and travel from any assets. But if we ever got there, it would go into a pool that would be reported to Judge Moyet that would be available for all creditors. It doesn't come to me. It doesn't come to Ms. Orenstein. It is reported and accounted for to Judge Moyet, who will then create a scale and a parsing of payment of the creditors. I assume he would take care of the professionals that he appointed to go collect it, but I wouldn't presume that Judge Moyet wouldn't apply equity and to the extent there were other creditors would take that and apply it appropriately. Assuming, arguendo, that we were to conclude that fees should have been segregated, what Texas authority says that you can go back and segregate after the fact, which is what the briefing says, oh, well, we could do that? Well, there was a stipulation on the record that allowed us to provide a couple of exhibits that were accepted into evidence and that the court considered. There were summary exhibits that broke the claims down as to pre- and post-petition, and I want to go back to that because respectfully, Mr. Rucavina, both in his briefing and before you made a misstatement. The misstatement was that there was a large amount of fees, more than the percentage that would be applicable pre-petition or post-petition to Mr. Mandel. That is not accurate. Mr. Mandel was given full credit for every payment that he made pre-petition, and he made zero to the attorney's fees, even though he now stipulates they were properly earned under the state order pre-petition. Zero. I'm sorry. I appreciate that's helpful information, but it's not the answer to my question. What Texas authority says that you can go back after the fact and segregate if you need to, rather than you just because you failed to segregate, you don't get anything, which is there's a lot more authority that says that. Is Your Honor suggesting in a remand? If we were to remand because we think it's commingled, then what Texas authority says you can try to segregate after the fact and recreate, which was sort of done in those distinct examples but would have to be done across the board? Respectfully, Your Honor, I think the materials that would allow for it are already before the court for purposes of a remand. Where? Because what was stipulated without objection and which created a presumption, the presumption that applies was created by the stipulated admission of a multitude of exhibits that would have been satisfactory under the receivership statute, satisfactory under the applicable receivership six elements, and would have been satisfactory under the Arthur Anderson elements, and it consists of the following. Ms. Orenstein's uncontroverted testimony, there were no other experts that testified. Her multiple affidavits that laid out all the factors and the different discrete categories. Her detailed invoices as well as mine. We don't have those. But, Your Honor, the trial court does have them, and if you were to remand and if you did determine that he was entitled to have some segregation applied, that is the segregations already in those invoices. How do we know that? If you didn't segregate, we have to take your word for it that you segregated because we don't have the documents that show you did. I mean, I'm not saying I wouldn't want to take your word for it, your able counsel. There's nothing pejorative there. But that's not in the record, and I don't understand why that's not in the record. Your Honor, I can't account for the time period between 2011 and today. We had Katrina that intervened. We had a change in computer systems at the courthouses that intervened, and it's the scanning and the conversion of hard copy to digital that has been the issue, both for Mr. Ruccovino. No, those are not in the six boxes. What you're talking about is not in the six boxes. It was not reviewed, but it didn't make it into the evidence. We have the six boxes now. You agree we can look at the six boxes? Absolutely. We have looked at the six boxes, so assume that we can and use them. I presume, Your Honor, respectfully, that they are still in the in-camera inspection and still in the sealed envelope that was provided to the court at the court's discretion and direction. So you think the sealed envelope is in the six boxes? I don't know that it's in the six boxes. I don't think it is. I'm simply telling you that the court has and the court was provided within the number of days that it specified the unredacted versions. My memory is it was provided the unredacted versions for each. Can we look at that? If we could get the sealed envelope from the district court, were we allowed to look at that? Yes, Your Honor. Okay, and the opposing counsel is shaking his head yes as well. So to let the record reflect, we can look at that if we weren't able to get it. And the honorable bankruptcy judge did look at it, which is how she made her segregation and her discounting under the reasonableness factors of Arthur Anderson and the receivership case law that controls. Can you address 502B and 506B and the bankruptcy code legal issue that's of interest? I cannot, Your Honor. Ms. Orenstein's time was entirely devoted to the addressing of that issue and the new case law that we believe controls that distinction and the ability for this court, A, to award the fees as they've been awarded, and the jurisdiction both under the bankruptcy code and all other authority to do so. And I would defer to her. I see my time is winding up. Are there any questions that I haven't resolved? I'm happy to do so. Okay. Thank you, Your Honors. Good morning, Your Honor, if it pleases the court. My name is Rosette Orenstein, and I want to first answer the last question, Judge Elrod, that you raised. When the record first came to us in May of 2017 for this matter, I saw the record was not complete from everything that both Mr. Rucavina and I had designated on the record on appeal from the district court. I proceeded to contact the clerk here and say the record's not complete. We need to make sure it gets taken care of. I was sent to the district clerk's record clerk to make sure that was done. They sent me to the bankruptcy clerk because that's where the record ultimately came from. I personally prepared a flash drive with all the record items that we had designated, which includes, Judge Elrod, I want to say there's over 300 pages of invoices, detailed invoices, because I kept track of my time at the tenth of an hour throughout the time period. I delivered that to the bankruptcy court personally because I was meeting a lawyer up there anyway for lunch, and I went and took the flash drive up there to make sure that they had the record so that when we got to this point, we wouldn't have that issue. I was surprised that until, I think it was a few days before we came here, I saw a notation that there had been an additional document sent to the court. I made the assumption that that included the flash drive that I personally delivered to the bankruptcy court for delivery to this court. Your Honor. You don't have the sealed, does that include the sealed and camera documents? Yes, Your Honor. It includes everything, Your Honor. Your Honor, I am here to address the issue of first impression that Mr. Rucavina talked about regarding Section 502 and 506 of the Bankruptcy Code. Your Honor, what I had submitted a few days before this hearing was the Pioneers case, which was decided by Judge Bohm in the Southern District of Texas on February 18, 2018, and that's why we didn't brief it, because we didn't have it at the time. Your Honor, as with anything in the Bankruptcy Code, you start with the text of Section 502 and the text of Section 506. 502, Your Honor, is the primary Bankruptcy Code section that we look at to determine if a claim is going to be allowed. And there are nine exceptions to the rule that says you shall allow a claim unless the following exceptions apply. One of those exceptions, Your Honor, is unmatured interest, which the United States Supreme Court addressed in the Timbers case. We don't have that here. We don't have any exception under Section 502 that applies in this case. Therefore, the starting position from the text itself of Section 502 is the claim is allowable. We then get to Section 506, and the traveler's decision, Your Honor, from the Supreme Court did not decide whether Section 506 modified or changed their determination that pre-petition agreed to. Let me rephrase that. That an agreement that exists pre-petition that allows for the payment of attorney's fees is enforceable post-petition. The claims are still pre-petition claims, and they're generally unsecured claims, but travelers didn't decide that because that issue had not been brought up in the underlying courts. So the question of whether Section 506 somehow limited Section 502, the allowance of that claim, was not addressed by the Supreme Court and travelers. But travelers did allow to travelers' insurance the post-petition incurred attorney's fees that they incurred in fighting with PG&E in the bankruptcy court, in the same objection that you're hearing here today from Mr. McAvena regarding that you can't have post-petition attorney's fees incurred or charged in a bankruptcy case. The Supreme Court said that just because, as PG&E objected, these are purely bankruptcy issues, the Supreme Court said it doesn't matter that they're purely bankruptcy issues. You have a pre-petition agreement that says that you're entitled to have your attorney's fees paid. We start with a proposition that creditors' rights as well as debtors' rights originally start from state law, and that's a contract, and you have a contractual right to those attorney's fees. That occurs and continues to apply post-petition. They are unliquidated claims. If you were to lose this argument, we would need to remand so that the court could deduct attorney's fees for post-petition work on behalf of White and Isle not done in your capacity as a receiver. Is that correct? That's probably correct, yes, Your Honor. Okay. How does your argument not render language in 506 superfluous? It doesn't, Your Honor, and I'll start with looking at, in particular, Section 506. If the court looks at Section 506A1, it starts with the following phrase, an allowed claim of a creditor secured by a lien on property. The preposition there, the first phrase, is that you have an allowed claim first. That's why you look at Section 502. 506 helps determine the priority of claims because if you have an allowed claim and it's secured by collateral, then nobody can come in in front of you on your collateral, up to the value of your collateral. That is also the exception that Section 506 says, okay, now, notwithstanding 502, you can also have unmatured interest that continues to accrue. That's the exception to 502. 506 then continues to determine what happens and how, basically, you treat a secured claim. It's not superfluous whatsoever, Your Honor. Your Honor, I want to address briefly, I know I only have three minutes, I want to address briefly the equity arguments which are in Mr. Mendel's briefing, and in particular, Judge Bohm's latest opinion. I did cite Judge Davis's opinion in the 804 Congress case, which this Court had remanded to Judge Davis, again, for the issue, Your Honor, of whether unsecured or undersecured claimants who then elect, unsecured claimants who then elect 1111B so that their claim is treated completely as secured, even though a portion of it is unsecured. This Court remanded that back to Judge Davis so that he could determine whether the claims of the creditor for attorney's fees postpetition were allowable or not under Section 502 and how Section 506 addressed that. So, Your Honor, I think that the equity arguments that have been raised, unfortunately, don't comport with what Section 502 and Section 506 specifically say, the text of those documents. And, Your Honor, there's the equally compelling argument for equity from the creditor's side and from what the Supreme Court has instructed us to look at for more than 10, 15 years now, which is creditor's rights are to be enforced once there's a bankruptcy filing, unless there's a specific reason within the bankruptcy code itself that determines that those rights should not be enforced. Otherwise, the presumption is that they are enforceable. Your Honor, that is all I have, and I will tell the Court that the Pioneer Carriers case, which we added in our supplemental briefing, has been appealed. So, the issue is ripe, I believe, for decision, and I would ask the Court to follow what the Supreme Court has told us to do. Creditor's rights do not disappear just because somebody files them. Do we need to wait for that? We don't need to. We're here first, right? Yes, Your Honor. I'm not saying to wait for that. I'm just saying that the issue is ripe for decision by this Court. Okay. Thank you, Your Honor. Judge Elrod, I am primarily a bankruptcy attorney, but I did appear before you in Houston, and I do practice in Texas State Court, and I can tell you absolutely that a state court judge would say, how you segregated your times. I would suggest to you that there is no need to review the six boxes. There is no need to review any vanilla envelopes, because as I brief on page 14 and 15,  I'm asking her, I'm quoting, you've told me already you can't allocate your fees between your fees as receiver and your fees as counsel, right? Answer, yes. Then I ask Ms. Orenstein, what percentage of the fees that you spent in this case were spent protecting White Nile, vis-a-vis protecting your personal proof of claim, vis-a-vis protecting MSM's proof of claim? And the answer, I'm quoting, the fees are not segregated in that manner. So, Your Honor, there's no need to scour the record. I would have done that for you if there was anything there. That's fact one. Fact two, opposing counsel phrased the state court receivership order. I'm quoting his language. He said those orders allow the receiver to control and manage White Nile. That is not correct. Those orders say that she gets to control White Nile's participation in this litigation. That's a fact. Fact three, the receiver lost 21 out of 23 proceedings had in the bankruptcy case. 21 of 23, yet there was only a 5% deduction in fees. My client as the prevailing party had to pay me, which he hasn't, by the way, because he doesn't have a penny, and he had to pay his opponent's fees. That is unheard of. It's unheard of that the prevailing party in 21 of 23 proceedings should pay. And, by the way, we're not talking about very different proceedings. We're talking about a motion to lift stay denied, motion to reconsider denied, second motion to lift stay denied, motion to reconsider denied, third motion to lift stay finally granted some years later on down the road, that my client has the pleasure of being forever now indebted to in a non-dischargeable judgment. 38.01 of the Texas Old Procedures Code is clear. If you want attorney's fees, you must prevail. That is the sole basis on which they receive fees for their post-petition work. That is the sole legal basis, 38.01. The bankruptcy court said so, yet they must prevail. And in 21 of 23 proceedings, they did not prevail. And fourth, another fact. What does that mean, the ultimate result? Did they or did they not prevail? It means, Your Honor, that as a predicate matter, so now I'm talking about when they were representing their own interests, not when they were acting for the interests of White Nile. It means that as a predicate matter, they don't even get attorney's fees under a contract, in this case being the receivership order, unless and until they prevail. That's just black-and-white Texas law. So I don't know what the quantification of that number is, Your Honor. But, for example, when they filed a motion to lift stay, acting as personal creditors, and that was denied, they were now awarded attorney's fees under 38.01 as though they had prevailed. That is, again, the bankruptcy court erring from that. Those attorney's fees are part of the judgment that was rendered against your client. Yes, Your Honor. Yes, the $490,000, some portion of them is for the 21 proceedings that they lost. So what you're saying is they should have gotten something for winning the whole thing and for winning the ones that they got, but they shouldn't be getting for the amount of time spent preparing for these proceedings that are unsuccessful. Yes, I'm saying two things. I'm saying under any metric that the courts look at, one of the factors is the merits and the success of the fees incurred. Here there was a 5% reduction. I would suggest that that is on its face flat wrong. But I know that I'm not going to win an argument on evidence, so I'm saying that for those fees where they're protecting their own interests as creditors, the only legal basis to shift the award is Section 38.01, which is what the bankruptcy court said, and the bankruptcy court erred as a matter of law because the bankruptcy court said, she said herself, you don't have to prevail on that statute. That's wrong, and I've cited, Your Honor, multiple Supreme Court of Texas and Fifth Circuit opinions that say as a threshold matter you must prevail. Briefly on the 506-502 issue, Your Honors, I've briefed that at length. I admit that the issue is murky, but there is no way that you're not writing 506-B out of the code. 506-B says basically only an oversecured creditor gets attorney's fees. If that were the end of the analysis, I submit that the answer is easy. The only reason why it becomes murky is because of 502, which is the code section typically governing allowance. But Section 506-B also talks about allowing attorney's fees, and my time is almost up. 506-A says that allowed claim is secured up to the extent of collateral. That already effectuates what Ms. Orenstein is talking about. There's no need for 506-B. If the collateral exceeds the debt, and the debt includes the attorney's fees, it's allowed under 502. 506-A governs. You've written 506-B out. My time is up. I apologize. So do you agree with the question and the answer that were given by opposing counsel, by Ms. Orenstein herself, that she would not be entitled on remand to attorney's fees for post-petition work on behalf of White Nile, not done as a receiver if you were successful in that argument, and so that would have to be remanded for those to be taken out? Is that the full impact of if you were to prevail in this 506 argument? If I was to prevail in the 506 argument, then neither White Nile, Orenstein, nor MSM would receive post-petition attorney's fees they spent protecting their own interests as creditors. That's the best way I can answer that. For all of them, not yes? For all of them, yes. So not just her, but the White Nile and MSM? Yes, Your Honor, yes, because they were acting as any unsecured prepetition creditor would have. Thank you, Your Honor.